IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **HIGH PLAINS COMMUNITY DEVELOPMENT CORPORATION,** | ) ) ) | **CASE NO. 4:07CV3149** |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) ) | |
| **DR. JOANN SCHAEFER, CHIEF MEDICAL OFFICER, DIVISION OF PUBLIC HEALTH, NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES, In her official capacity as administrator,** | ) ) ) ) ) ) ) ) ) | **MEMORANDUM AND ORDER** |
| and | ) ) | |
| **TERRY HINN & MARILYN HINN HAYES, Natural Persons,** | ) ) ) ) ) | |
| and | ) ) | |
| **HINN'S MOBILE HOMES, INC. A Nebraska Corporation,** | ) ) ) ) | |
| **Defendants.** | ) | |

The matters before the Court are three Motions for Summary Judgment, submitted by Defendant Terry Hinn (Filing No. 48), Defendants Marilyn Hinn Hays[1] and Hinn Mobile Homes (Filing No. 51), and Defendant Dr. Joann Schaefer (Filing No. 56). All Defendants challenge the Plaintiff's standing to bring this action, and Terry Hinn also contends that the uncontroverted evidence shows that the Plaintiff suffered no injuries traceable to his

---

[1] Although the caption indicates a spelling "Hayes," the correct spelling appears to be "Hays," and that spelling will be used throughout this Memorandum and Order.

actions. For the reasons that follow, all the Defendants' motions for summary judgment will be granted.

**FACTS**

The Defendants' briefs in support of their motions set forth statements of material facts as to which there is no genuine issue for trial, in compliance with NECivR 56.1(a). (Filing Nos. 50, 53, 57). The Plaintiff does not contest any of those facts, which are deemed admitted.[2] The Plaintiff presents additional facts in its brief, which it contends are also uncontroverted, and the Defendants have not disputed any of those facts in their reply briefs. Accordingly, all those facts, summarized below, are uncontested.

Plaintiff High Plains Community Development Corp., Inc. ("High Plains") is a Nebraska non-profit fair housing organization located in the Nebraska Panhandle region. High Plains is funded by the United States Department of Housing and Urban Development and the Nebraska Department of Economic Development, and has a mission of outreach and education about fair housing, including both public awareness and direct educational interaction with landlords and tenants. High Plains also accepts complaints from individuals about fair housing issues, including housing discrimination, and helps those individuals to process their complaints with other state and federal agencies whether or not High Plains staff believe the allegations are true. High Plains does not investigate complaints or make a final determination as to the merits of any complaint.

---

[2] See NECivR 56.1(b)(1). Neither does the Plaintiff's statement of facts in its brief suggest any factual dispute giving rise to an issue for trial. Instead, the Plaintiff's brief sets forth facts which Plaintiff contends are not in dispute. (Filing No. 58).

Defendants Terry Hinn ("Hinn") and Marilyn Hinn Hays ("Hays") are residents of Nebraska. Defendant Hinn's Mobile Homes, Inc. ("Hinn's Mobile Homes"), is a Nebraska corporation. Hinn is the Secretary and Treasurer of Hinn's Mobile Homes, owns approximately 30 per cent of its outstanding shares, and is in charge of its day-to-day operations which primarily involves management of the sale of manufactured homes. Hinn's Mobile Homes is the owner of Hinn's Mobile Home Park #2 ("Park #2), located at 505 Maple Street in Chadron, Nebraska, the subject of this action. Hays, and not Hinn, oversees the day-to-day operations of Park #2.

Dr. Joann Schaefer ("Schaefer") is the Chief Medical Officer of the Division of Health of the Nebraska Department of Health and Human Services ("HHS") and is named in her official capacity only.[3] HHS is an administrative agency of the State of Nebraska responsible for the issuance of licenses to mobile home parks in Nebraska. HHS has the authority to deny, suspend, revoke, or refuse to renew a license to operate a mobile home park if the mobile home park fails to comply with certain published standards. HHS issued an operating permit to "Hinns"[4] in March 2002 allowing the operation of Park #2, and renewed the permit annually. HHS also issued Mobile Home Park Inspection Reports related to Park #2 dated September 19, 1995, June 1, 1995, July 24, 1996, April 24, 1996,

---

[3] On November 11, 2007, High Plains' cause of action against Schaefer based on alleged violations of the Nebraska Fair Housing Act were dismissed. (Filing No. 44). Only High Plains' cause of action under the federal Fair Housing Act remains against Schaefer.

[4] Schaeffer refers to the "owners and operators . . . of a mobile home park" who were issued the operating permit from HHS as "Hinns," leaving the Court to speculate about what individuals or entities were in fact issued the operating permit. (Schaefer's Brief in Support of Motion for Summary Judgment, Filing 57, pp. 2, 5).

3

June 12, 2002, June 19, 2002, July 2, 2003, August 5, 2003, November 14, 2003, April 13, 2004, April 14, 2004, June 16, 2005, November 8, 2005, and April 11, 2006. These reports indicated various violations of regulatory codes set out by HHS, none of which rose to the level of creating imminent danger to anyone residing on the premises. HHS sent "Hinns" a series of letters between October 4, 1995, and April 20, 2006, notifying "Hinns" of violations of the regulatory code and requesting corrective action.

Rebecca Christian ("Christian") is the program coordinator and fair housing counselor for High Plains. Leslie Lame ("Lame"), an individual of Native American descent, is the alleged victim of the Defendants' discriminatory conduct that provided the sole basis for this action. Lame was a tenant at Park #2 during the fall of 2006. In September 2006, Christian helped Lame to prepare a housing discrimination complaint for filing with the Nebraska Equal Opportunity Commission, stating that Lame believed that she had been subjected to race discrimination by Hays.[5] Lame's complaint alleged that the mobile home she rented from Hinn's Mobile Homes lacked exterior doors, had leaky and unsafe plumbing, broken windows, and trash and debris littering the yard, all in violation of Nebraska regulations related to mobile home parks.

High Plains has produced a "Fair Housing Organizational Damages Worksheet" stating that Christian spent 100 hours at a rate of $18.48 per hour, and Marguerite Vey-Miller spent 167 hours at a rate of $25.60 per hour, assisting Lame.[6] (Filing No. 52-5).

---

[5] High Plains' statement of facts also names "Shane Hays" as someone who discriminated against Lame on the basis of her race, although he is not a Defendant.

[6] Although Plaintiff's and Defendants' statements of facts include reference to Ms. Vey-Miller's time as 167 hours, the Court deciphers the document to read 67 hours with what appears to be a stray parenthesis proceeding the number (Filing No. 52-5). The

According to the document, this resulted in a total diversion of High Plains' resources in the amount of $3,563.20. The document also states that "testing and investigative expenses" resulted in a diversion of resources in the amount of $1,299.00.[7] High Plains cannot specify how much of this staff time or expenditure of funds may be attributable to the alleged conduct in the Amended Complaint, because much of the time staff spent with Lame related to other issues that had nothing to do with the named Defendants or their alleged discriminatory conduct.[8] Christian perceives that High Plains' mission has been frustrated by the alleged housing discrimination at Park #2, "due to damage to High Plains' reputation." (High Plains' Brief in Opposition to Motion[s] for Summary Judgment, Filing No. 58, p. 6).

On June 12, 2007, High Plains filed this suit against the Defendants, alleging that they violated the federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, and the Nebraska Fair Housing Act, Neb. Rev. Stat. § 20-301 *et seq.*, by engaging in discriminatory housing

---

$1715.20 attributed to Ms Vey-Miller would then be a correct calculation of 67 hours at $25.60 per hour (Filing No. 52-5).

[7] The "testing and investigative expenses" are itemized as follows: $30.00 for copies; $20.00 for mailings; $450.00 for application fees and $799.00 for a trip to Omaha for a deposition (Filing No. 52-5). Although the document does not attach specific dates to these expenses, a handwritten reference indicates "this is thru [sic] 11-16-07" (Filing No. 52-5). The stated expenses appear to have been incurred concurrent with, or after, the filing of the Complaint in this matter and further appear to be directly attributable to the pending litigation. As such, these expenses are excluded from the Court's analysis of Plaintiff's standing. "An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit." *Spann v. Colonial Village Inc.*, 899 F.2d 24 (D.C. Cir. 1990).

[8] High Plains had an extensive relationship with Lame on a variety of housing issues. Christian's Case Detail Report for Lame indicates that since September 14, 2006, High Plains assisted Lame in a multitude of tenancy issues unrelated to the Defendants or the allegations in this case. (Case Detail Report, Filing No. 59-4, CM/ECF pp. 10-17).

practices, providing substandard housing to Native American tenants based on race. The Amended Complaint (Filing No. 21) seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

The Fair Housing Act provides that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color . . . or national origin."  42 U.S.C. § 3604 (b).  An "aggrieved person" may bring a civil action "to obtain appropriate relief with respect to such discriminatory housing practice or breach."  42 U.S.C. § 3613(a)(1)(A).  An "'[a]ggrieved person'" includes any person who – (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."  42 U.S.C. § 3602 (I).  All the Defendants challenge High Plains' standing to bring this action as an aggrieved person.

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982), the Supreme Court essentially dispensed with prudential limitations on standing in the context of an action under the Fair Housing Act, and required only "Art. III minima of injury in fact:  that the plaintiff allege that as a result of the defendant's actions he has suffered a 'distinct and

palpable injury[.]'" *Id.*, quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  The injuries must be "fairly traceable" to the defendant's actions.  *Id.* at 376.

The Supreme Court also recognized that an *organization* may have standing to pursue an action under the Fair Housing Act.  "In determining whether [an organization] has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual:  Has the plaintiff "'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction"?"  *Havens Realty*, 455 U.S. at 378-79, quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977).   If a defendant's actions in violation of the Fair Housing Act "perceptibly impaired" the plaintiff organization's ability to provide counseling and referral services for its clients, "there can be no question that the organization has suffered injury in fact."  *Id.* at 379.  "Such concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources – constitutes far more than simply a setback to the organization's abstract social interests."  *Id.*  "Of course, [the organization] will have to demonstrate at trial that it has indeed suffered impairment in its role of facilitating open housing before it will be entitled to judicial relief."  *Id.*, n.21

The Eighth Circuit addressed the issue of an organization's standing to sue under the Fair Housing Act in *Arkansas Acorn Fair Housing, Inc. v. Greystone Development, Ltd. Co.,* 160 F.3d 433 (1998).  "[T]he sole requirement for an organization . . . to have standing to sue in its own right under the FHA is injury in fact."  *Id.* at 434, citing *Havens Realty*, 455 U.S. at 372.  A fair housing organization satisfies the requirement of showing injury in fact if it "'devote[s] significant resources to identify and counteract' a defendant's unlawful practices."  *Id.*, quoting *Havens Realty*, 455 U.S. at 379.  "At the summary judgment stage, '[t]he party invoking federal jurisdiction bears the burden of establishing' injury in fact by

8

alleging specific facts that taken as true demonstrate the plaintiff suffered 'distinct and palpable injuries that are 'fairly traceable'' to the defendant's actions." *Id.*, citing *Havens Realty*, 455 U.S. at 376, quoting *Village of Arlington Heights,* 429 U.S. at 261.

In *Arkansas Acorn Fair Housing*, as here, the plaintiff claimed that its efforts to promote fair housing were impaired because its staff devoted time to the monitoring and investigation of the defendant's conduct, which the plaintiff alleged was in violation of the Fair Housing Act. The plaintiff claimed that such time and resources should have been devoted to educational activities and other programs that were "thwarted" by the defendant's conduct. At the summary judgment stage, however, the plaintiff presented "no facts to quantify the resources, if any, that were expended to counteract the effects of a single, allegedly discriminatory [act]." *Id.* at 434. "While the deflection of an organization's monetary and human resources from counseling or educational programs to legal efforts aimed at combating discrimination, such as monitoring and investigation, is itself sufficient to constitute an actual injury, . . . the injury must also be traceable to some act of the defendant." *Id.* at 434-35. "Absent specific facts establishing distinct and palpable injuries *fairly traceable* to [defendant's actions, plaintiff] cannot satisfy its burden at the summary judgment stage to establish the injury in fact requirement for standing under the FHA." *Id.* at 435 (emphasis in original).

High Plains has not demonstrated that any of the Defendants impaired High Plains' ability to provide counseling and referral services to its clients, or its mission of facilitating fair housing. Neither has High Plains presented evidence that it devoted significant resources to identify and counteract the Defendants' allegedly unlawful practices, nor that it suffered distinct and palpable injuries fairly traceable to the Defendants' actions. Specifically, High Plains has not countered and therefore concedes Defendants' factual

9

assertions that have been properly substantiated by the evidentiary record. It is uncontroverted that the discriminatory conduct alleged in the Amended Complaint related only to Lame, and it is uncontroverted that High Plains cannot specify the time or funds it devoted to addressing such conduct, because High Plains assisted Lame on a broad variety of issues unrelated to the Defendants' conduct and did not separately account for the time and expense devoted to each issue.[9] Accordingly, High Plains has not met its burden of demonstrating injury in fact, and it lacks standing under the Fair Housing Act.

## CONCLUSION

High Plains lacks standing to bring this action under the Fair Housing Act, and the federal claims presented in the Amended Complaint will be dismissed, with prejudice. The Court declines to exercise supplemental jurisdiction over the claims raised under the Nebraska Fair Housing Act, and those claims remaining against Defendants Terry Hinn, Marilyn Hinn Hays, and Hinns Mobile Homes will be dismissed without prejudice.

IT IS ORDERED:

1. The Motion for Summary Judgment of Defendant Terry Hinn (Filing No. 48) is granted;

---

[9]In contrast to the Plaintiff in *Arkansas Acorn Fair Housing*, High Plains made some attempt to quantify a portion of the resources it claims to have expended in assisting Lame with her housing problems as they relate to the Defendants. After scouring the evidentiary record, however, the Court must conclude that this attempt fell short of the required level of specificity. Fewer than 27 of the 100 hours that Christian spent with Lame are accounted for in the case detail report (Filing No. 52-5). Upon review, nearly one-third of those hours may be attributed to housing issues seemingly unrelated to the Defendants or their property. It is not possible to determine whether the remaining hours recorded on the case detail report are attributable to any alleged discrimination by Defendants or to more general issues related to condition of the dwelling or the payment of rent. None of Vey-Miller's time appears to be traceable to alleged discriminatory conduct. (Case Detail Report, Filing No. 59-4, CM/ECF pp. 10-17; Deposition of Rebecca Christian, Filing No. 52-2, CM/ECF p.32). In whole, High Plains failed to account for the time it spent with Lame on matters directly related to the alleged discriminatory behavior of Defendants.

2. The Motion for Summary Judgment of Defendants Marilyn Hinn Hays and Hinns Mobile Homes, Inc. (Filing No. 51) is granted;

3. The Motion for Summary Judgment of Defendant Dr. Joann Schaefer (Filing No. 56) is granted;

4. The First and Third Causes of Action in the Amended Complaint (Filing No. 21), based on alleged violations of the federal Fair Housing Act, are dismissed, with prejudice;

5. The Second and Fourth Causes of Action in the Amended Complaint (Filing No. 21) based on alleged violations of the Nebraska Fair Housing Act are dismissed, without prejudice; and

6. A separate Judgment will be entered.

DATED this 2nd day of May, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge